UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAKOWSKI,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>MARCUS POLLARD, WARDEN<br><br>　　　　　Respondent. | No.  2:20-cv-00549 KJM GGH P<br><br><br>FINDINGS AND RECOMMENDATIONS |

*Introduction and Summary*

　　Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

　　Petitioner was convicted of robbery and because of his previous criminal record, he was sentenced to 25 years to life with three consecutive five-year term enhancements on account of the prior convictions.  As petitioner was still serving a 16-year sentence on another conviction, the sentence in this case was imposed consecutively with the 16-year sentence.  Neither party contests that the sentence here, when considered in tandem with the 16-year sentence, is equivalent to life without the possibility of parole given petitioner's age (mid-forties) and the length of the sentences.

Petitioner believes he is entitled to relief because the trial court did not *sua sponte* instruct on the lesser offense of grand theft/larceny, and because his counsel expressly demurred to giving the lesser included offense instruction. Petitioner also believes that his sentence exceeds the bounds of the Eighth Amendment.

The entire premise of petitioner's lesser included offense instruction is that the jury would have opted for this lesser offense because it found that petitioner committed the robbery without personal use of a firearm as defined by California law. First, petitioner has no constitutional right to a lesser included offense instruction in a non-capital case. Moreover, because the premise of petitioner's argument is incorrect, his conclusion fails as well with respect to his ineffective assistance of counsel claim. Finally, the bounds of the Eighth Amendment were not exceeded in this case. Accordingly, the undersigned recommends the petition should be denied.

*Background Facts*

The background facts are mostly taken from the opinion of the California Court of Appeal Third Appellate District ("Court of Appeal"). The undersigned includes additional facts to clarify that no actually used firearm was found or introduced at trial.

> Store clerk, K.G., worked with K.J. at an electronics store. One evening, defendant entered the store and K.G. assisted him for approximately an hour. Defendant was interested in a police scanner, headphones, and a backpack. K.G. rang up the items, and defendant asked her to put them in the backpack instead of using a store bag.
>
> Defendant left the store to get something from his car. When he returned, K.G. asked him if he wanted a protection plan for his electronics and then noticed that defendant was pointing what she believed to be a gun at her. He demanded all the money from the register. K.G. was terrified and panicked, giving defendant everything he wanted. Defendant took the money and the backpack, telling K.G. not to call the police for a few minutes.
>
> After defendant left, K.J. locked the front door, and both clerks retreated to the back room to call 911. A recording of this call was played for the jury. K.G. said she was inexperienced regarding guns, but nevertheless told authorities the gun was black and looked like a "police" or "cop" gun.
>
> Officer Mel Cuckovich took K.G.'s statement on the day of the crime. She was "very scared and startled" and her actions were

>consistent with other victims of theft or robbery. Nothing in K.G.'s demeanor suggested she was not a legitimate victim of robbery. Officer Cuckovich and another officer both testified to the difficulty of distinguishing between replica and real guns.
>
>Sergeant Dan Bloomfield testified regarding defendant's previous robbery of a drug store, which was caught on surveillance tape. Defendant took some shirts to the clerk at the front register, who scanned them. While that clerk had her back turned getting cigarettes, defendant pulled out a semi-automatic handgun and placed the muzzle of the gun on the counter, pointing it at the clerk. When the clerk turned back around, she removed the money from the cash register and handed it to defendant, who then left the store. The gun in this video was similar to the semi-automatic handgun depicted in People's Exhibit 5, which the victim said was consistent with her description of the kind of gun that was used during the robbery.
>
>Defendant called a single witness, Detective Rodrick Guerra. Detective Guerra testified concerning K.G.'s statements and that "some replica guns can look a lot like real guns." He further testified that, to his knowledge, no gun or stolen merchandise had been recovered in the case.
>
>Following the jury's guilty verdict regarding the robbery, the jury was presented evidence relevant to the People's allegations of three prior criminal convictions. Deputy District Attorney Brad Ng testified as an expert in prior criminal convictions, including California Department of Corrections and Rehabilitation (CDCR) records and his review of defendant's CDCR records for the three alleged priors. Based upon that review, Deputy Ng opined defendant had suffered: (1) a first degree burglary conviction on April 8, 1992; (2) a first degree burglary conviction on July 25, 1994; and (3) a terrorist or criminal threats conviction on August 4, 2000.

People v. Kakowski, No. C086377, 2019 WL 5485119, at *1-2 (Cal. Ct. App. Oct. 25, 2019).

The undersigned has reviewed the entire transcript of the trial. It is evident, that although the clerk/robbery victim believed that the gun used in the robbery looked real, there was not an actually used firearm introduced into evidence. See ECF No. 20-3 at 53-54 (referring to People's Exhibits 5 and 6 containing pictures of a generic semi-automatic weapon along with a revolver). See also ECF No. 20-3 at 124 (referring again to People's Exhibits 5 and 6 as generic weapons). Finally, see the final arguments of both trial counsel.

////

////

////

3

*Issues Presented*

Petitioner presents the following three issues in his first amended petition:

1. Whether the Trial Court Had a Sua Sponte Duty to Instruct on the Lesser Included Offense of Grand Theft/Larceny;
2. Whether Counsel was Ineffective for Foregoing the Lesser Included Offense Instruction; and
3. Whether Petitioner's Sentence Exceeded the Bounds of the Eighth Amendment.

*The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") Standards*

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 567 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra,

4

529 U.S. at 412. See also Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.' ") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

*Discussion*

    A.  Whether Pursuant to AEDPA the Failure of a Trial Court to Instruct on a Lesser Included Offense States a Federal Offense

Grand theft is a lesser included offense of robbery as grand theft can occur in the absence of force or fear, and robbery requires that element.[1] See, e.g., People v. Burns, 172 Cal.App.4th 1251, 1259 (2009); People v. Guzman, 45 Cal.App.4th 1023, 1028 (1996). Petitioner asserts that the trial court should have instructed the jury on grand theft and not just robbery.

The California Court of Appeal in this case, in explicating California law, and petitioner herein, focus on the strong theme in California law that a trial court should generally instruct,

////

////

---

[1] Cal. Penal Code Sec. 211: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Grand theft is defined pursuant to Cal. Penal Code Sec. 484 as: "(a) Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property…. is guilty of theft…."  In addition, Cal. Penal Code Sec. 487 provides: "Grand theft is theft committed in any of the following cases: […] (c) When the property is taken from the person of another."

even *sua sponte*, on a lesser included offense. While this law may have bearing on the ineffectiveness of counsel issue, see below, it has no bearing on whether the *federal* Constitution requires such a *sua sponte* instruction.[2]

> In Beck v. Alabama, 447 U.S. 625 (1980), the Supreme Court held that due process is violated in a capital case "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." 447 U.S. at 627. Beck expressly declined to decide whether due process would require giving a lesser included offense instruction in non-capital cases. Id. at 638 n.14. The Ninth Circuit has declined to extend Beck to non-capital cases, and "[u]nder the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998).

Oquita v. Diaz, No. 1:19-cv-00670-AWI-SAB-HC, 2019 WL 5813392, at *13 (E.D. Cal. Nov. 7, 2019).

That is the end of the *federal* issue whether the trial court should have *sua sponte* instructed on lesser offenses. Accordingly, the undersigned recommends this claim be denied.

    B. <u>Whether Counsel Was Ineffective for not Requesting a Lesser Included Offense Instruction</u>

In this case, counsel expressly demurred on the giving of a lesser included offense instruction. ECF No. 20-3 at 142. The Court of Appeal denied this ineffective assistance claim on the merits. Because the reasoning of the denial of the ineffectiveness claim rested on the reasons why (under state law) no *sua sponte* lesser offense instruction was necessary, the undersigned will set forth the entire reasoning of the Court of Appeal:

> Grand theft is a lesser included offense of robbery, lacking the additional element of force or fear. (§ 487; *People v. Ramkeesoon* (1985) 39 Cal.3d 346, 351.) However, instructions on grand theft were only required here if there was "substantial evidence" in the record from which a reasonable jury could have determined "the lesser offense, but not the greater, was committed." (*Breverman*, supra, 19 Cal.4th at p. 162.) Here, the uncontroverted evidence presented was that K.G. was terrified when she acquiesced to

---

[2] Respondent's counsel also spends some effort on whether under California law, a *sua sponte* instruction was necessary. However, the undersigned has determined not to discuss this "what if" argument when it is clear that no federal claim presently exists.

6

defendant's demand, providing him the money and the merchandise. Her terror was reinforced by the fact that, after all, she had what she believed was a handgun pointed at her just a short distance away. There was no evidence that K.G. was not frightened during the theft, but nonetheless turned over the items. Rather, defendant's theory, which was based primarily on unreasonable inferences from circumstantial evidence elicited during the People's case, was that he did not steal anything and that K.G. made up the robbery to conceal her own thievery.

Therefore, even though grand theft can be a lesser included offense to robbery, (*People v. Ramkeesoon*, *supra,* 39 Cal.3d at p. 351), here there was not substantial evidence from which a reasonable jury could have reasonably concluded that defendant committed grand theft, but not robbery. (See *People v. Brew* (1991) 2 Cal.App.4th 99, 105 [no error in failing to instruct on grand theft where if any crime was committed, it was robbery].) There was no evidence presented that defendant stole the items but did not use force or fear to accomplish the crime. Under these circumstances, there is no basis other than "an unexplainable rejection of the prosecution's evidence" upon which the jury could find that the lesser offense of grand theft, but not the greater offense of robbery had occurred. (See *People v. Kraft, supra*, 23 Cal.4th at p. 1063.)

The jury's rejection of the firearm enhancement does not alter this conclusion. Contrary to the uncontroverted evidence concerning K.G.'s fear arising from defendant's use of what she believed was a gun, the defense elicited evidence raising doubt over whether defendant had used a real gun, as opposed to a replica or fake gun. Nonetheless, as conceded by defendant's closing argument, whether defendant committed robbery was not dependent on defendant's use of a real firearm, but rather his creation of the fear of unlawful injury to K.G. (See §§ 211, 212; *People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1320 [victim's prior training did not constitute substantial evidence from which a jury could find the victim was not afraid after defendant pushed a customer aside and made escalating demands for the money despite the lack of weapon or verbal threats].) Thus, the jury's rejection of the firearm enhancement was in all likelihood based upon K.G.'s uncertainty whether defendant's gun was real as opposed to a replica. The jury's rejection of the firearm use allegation does not indicate substantial evidence from which a jury could have also inferred that K.G. was not terrified as a result of defendant wielding what she believed was a real gun.

### B. **Ineffective Assistance of Counsel**

Having concluded that the trial court did not err in failing to instruct on grand theft because there was not substantial evidence in the record supporting that instruction, we reject defendant's argument that his counsel was ineffective for failing to request the grand theft instruction. Because a request for a lesser included instruction of theft on this evidence would fail, defendant's attorney cannot be

////

7

> ineffective for not requesting it. (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836 [counsel not ineffective in failing to request instructions not supported by evidence].)

People v. Kakowski, supra, 2019 WL 5485119, at *3-4.

In federal habeas, on an ineffective assistance claim, petitioner must overcome not only the deferential standards of Strickland v. Washington, 466 U.S. 668 (1984), but AEDPA deference as well.

Clearly established federal law for ineffective assistance of counsel claims is found in Strickland v. Washington, supra. To succeed on a Strickland claim, a defendant/petitioner must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " Harrington, supra, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 687). A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669. Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. There is, in addition, a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 198 (2011) (internal quotation marks and alterations omitted).

Moreover, defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of

8

1  counsel's conduct.' " United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting
2  Strickland, 466 U.S. at 690). See also Rhoades v. Henry, 638 F.3d 1027, 1036 (9th Cir. 2011)
3  (counsel did not render ineffective assistance in failing to investigate or raise an argument on
4  appeal where "neither would have gone anywhere"). Prejudice is found where "there is a
5  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
6  would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a
7  probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different
8  result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. Under AEDPA,
9  "[t]he pivotal question is whether the state court's application of the Strickland standard was
10 unreasonable." Id. at 101. "[B]ecause the Strickland standard is a general standard, a state court
11 has even more latitude to reasonably determine that a defendant has not satisfied that standard."
12 Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

13     In this case, petitioner (attaching his appellate court briefs) claims that the jury was
14 looking to have him convicted of the lesser offense, but only chose the greater offense because it
15 had no choice. Petitioner points to the fact that the jury could not find that the weapon used in the
16 robbery was "real," and that the defense pointed out the "coolness under fire" of the store clerk,
17 i.e., the tone her later call to police dispatch did not show that she was very fearful. Petitioner's
18 speculative postulations do not rise to the level where one could say that the Court of Appeal's
19 opinion was unreasonable.

20     Firstly, petitioner's conclusion is quintessential speculation. The jury in this case was
21 attentive to the facts of the case. The weapon used in the robbery was evidently not recovered, but
22 the clerk in this case testified that the picture showing the semi-automatic handgun was like the
23 one she saw on the robbery day. And, one does not have to dissolve into a puddle of wet mush
24 with quasi-incoherent speech to be considered sufficiently "fearful" for purposes of the robbery
25 definition. Rather, any reasonable person in a store clerk position, upon seeing what appeared to
26 be a real gun, associated with demands for the store's money, would be sufficiently fearful for
27 their life simply because of that fact. The clerk in this case did testify that she was "terrified,"
28 "panicked" in this robbery situation, ECF No. 20-3 at 49, and her later ability to talk coherently

with police personnel, even though she was still very nervous and in shock, does not detract from that fearfulness in the least. See also ECF No. 20-3 at 51, 58.

Secondly, there is no requirement in the robbery definition that the firearm utilized actually be a "real gun," nor does a robbery victim have to accomplish a split-second weapon's analysis to determine whether the gun could just be a facsimile. There is no evidence that the gun in this case looked clownish, or simply like a child's plaything. There is evidence that the gun looked real and may well have been.[3] The fact that the jury could not find beyond a reasonable doubt that the firearm in question here was real (because that firearm was not produced into evidence), does not detract from its finding that the store clerk, having seen what she thought was a real gun, was fearful of petitioner in the robbery situation.

While petitioner can argue the Court of Appeal's conclusion that there was no substantial evidence showing lack of fear in the robbery situation, and indeed, that was the thrust of the defense, that is a far cry from finding that the appellate court's conclusion was AEDPA unreasonable. It is not. Accordingly, the ineffective assistance of counsel claim should be denied.[4]

    C.  <u>Petitioner's Effective Life Without the Possibility of Parole Sentence Does Not Violate the Eighth Amendment and AEDPA Deference Requires That It Be Upheld</u>

Petitioner was sentenced on his bank robbery to an indeterminate Three Strikes sentence of 25 years to life. Each of the strikes also caused a determinate enhancement to be made of 5 years for each strike to run first, with the indeterminate term consecutive to the running of the determinate term. Petitioner's entire sentence was to run consecutive to the sentence petitioner was serving for Southern California crimes. ECF No. 20-3 at 286-287. No one contests the fact

---

[3] Moreover, evidence was introduced that petitioner had used a real semi-automatic weapon just prior to the robbery at issue here.

[4] It may well have been the defense strategy to put the jury in the position of an "all-or-nothing" conviction scenario given the lack of actual weapon utilized. It is doubtlful, however, that the jury would have opted for the lesser offense because the direct evidence of petitioner's fear was uncontradicted. The inferential counterevidence was not strong at all. However, the undersigned need not relay on this theory as there is no evidence in the record that the all-or-nothing strategy was an actual, purposeful strategy, and the Court of Appeal's no substantial evidence of lack of fear conclusion was AEDPA unreasonable.

10

that there is no realistic possibility of parole before petitioner's life will have expired.

Clearly, the consecutive nature of the sentences in this case was based on petitioner's lengthy criminal history. Petitioner had been convicted 15 times prior to this sentence for crimes which included burglaries, robberies and criminal threats; the convictions spanned from 1992 to 2016. ECF No. 20-1 at 281-282. The crime of conviction here was an armed robbery. Petitioner was not a minor at the time of this conviction and sentence, far from it at 44 years old at the time of sentencing, ECF No. 20-1 at 278, and the undersigned is not aware of any United States Supreme Court case which finds the imposition of a "without parole" sentence to be constitutionally prohibited in circumstances close to the present case. Compare Solem v. Helm, 463 U.S. 277 (1983) (non-violent conviction with "relatively minor" and few prior convictions would not allow a "without parole" sentence), with Harmelin v. Michigan, 501 U.S. 957 (1991) (life without parole sentence for possession of 672 grams of cocaine, without prior felony convictions is not constitutionally prohibited). See also Lockyer, supra, 538 U.S. 63 (affirming the imposition of consecutive 25 years to life sentences for two counts of petty theft with a prior and a record similar to petitioner's); Norris v. Morgan, 622 F.3d 1276 (9th Cir. 2010) (life without parole sentence for a second child molestation conviction does not violate the Eighth Amendment). Compare Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), with Ramirez v. Castro, 365 F.3d 755 (2004).

In this case, the California Court of Appeal found that petitioner's prior record combined with the conviction for armed robbery did not violate the Eighth Amendment. People v. Kakowski, supra, 2019 WL 5485119, at *4-5. The undersigned is unable to find any established United States Supreme Court authority holding that fair-minded jurists could not possibly uphold the sentence in this case. Accordingly, the undersigned recommends petitioner's third claim should be denied.

*Certificate of Appealability*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's first amended petition (ECF No. 13) should be denied on its merits; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 30, 2020

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE